**Dionysius RICHERSON, Plaintiff,**

v.

**Gerald R. JONES, United States Navy, Commanding Officer, Philadelphia Naval Shipyard, Defendant.**

Civ. A. No. 73–905.

United States District Court,
E. D. Pennsylvania.

Jan. 27, 1981.

Richard S. Meyer, Philadelphia, Pa., for plaintiff.

Robert S. Forster, Jr., Philadelphia, Pa., for defendant.

## OPINION

DITTER, District Judge.

This is an action brought by a federal employee under section 717 of the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e–16 *et seq.*, for alleged employment discrimination that denied him advancement because of his race. By orders dated December 15, 1975, and March 12, 1976, the late Honorable James H. Gorbey found that plaintiff was unlawfully discriminated against and awarded several retroactive promotions with back pay and both pre-judgment and post-judgment interest but declined to impose punitive damages. On appeal, the Third Circuit affirmed that

part of the district court's order denying punitive damages and directing retroactive promotion to GS–9 and GS–11 on the prescribed dates, but reversed that part which (1) provided for Richerson's promotion to GS–12 effective November 15, 1974; (2) established back pay provisions in accordance with its original determinations; (3) awarded pre-judgment and post-judgment interest; and (4) awarded counsel fees in the amount of $27,500. *Richerson v. Jones,* 551 F.2d 918, 929 (3d Cir. 1977).[1] Following remand by the Court of Appeals, this court on reassignment[2] found that but for the defendant's unlawful discrimination, plaintiff would have been promoted to GS–12 by December 4, 1974, and, thus, modified the original order of March 12, 1976, to reflect the back pay differential commensurate with such promotion. Plaintiff now seeks attorney's fees and costs incurred in the litigation of this issue on appeal and in the subsequent remand of the proceedings. Accordingly, plaintiff's counsel has submitted a detailed affidavit and brief in support of his supplemental petition for attorney's fees

and costs. The Government has filed a brief in opposition to the granting of all the counsel fees and costs that plaintiff has requested.

## I. Fee Entitlement

■ It is well settled that counsel fees may be awarded to a "prevailing party" in employment discrimination cases under 42 U.S.C. § 2000e–5(k). *Prandini v. National Tea Co.,* 557 F.2d 1015, 1017 (3d Cir. 1972) *(Prandini I).*[3] In *Sweetlowich v. County of Bucks,* 620 F.2d 33, 34 (3d Cir. 1980), the Third Circuit stated that a "prevailing party" is one who "essentially succeeds in obtaining the relief he seeks in his claims on the merits." *See also Bagby v. Beal,* 606 F.2d 411, 414–15 (3d Cir. 1979); *Hughes v. Repko,* 578 F.2d 483, 486–87 (3d Cir. 1978).[4]

■ The Government argues that none of the time spent on the appeal should be included in the fee award since all the issues raised therein were determined in its favor and against the plaintiff. Although not explicitly stated, the Government, in

---

1. Judge Gorbey issued an order on April 29, 1976, awarding counsel fees and expenses for work performed by plaintiff's counsel up to and including March 31, 1976. On appeal, the Third Circuit remanded on this issue so that the district court could make the necessary findings to support the award under its then recent decision in *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 540 F.2d 102 (3d Cir. 1976) (en banc) (*Lindy II.*) On June 7, 1977, Judge Gorbey issued an order detailing supplemental findings of fact and conclusions of law with respect to the fees award. The order reaffirmed the April 29, 1976, order, thus reinstating the award of attorneys' fees therein without prejudice to plaintiff's right to file a supplemental petition for fees and expenses in connection with any further proceedings.

2. This case was reassigned to me after the death of Judge Gorbey. I ordered the submission of additional evidence and briefs on the GS–12 promotion question.

3. This section provides:

   In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States a reasonable attorney's fee as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.

This provision is specifically applicable to employment discrimination suits brought against the federal government under the Equal Employment Opportunity Act of 1972. 42 U.S.C. § 2000e–16(d).

A prevailing *plaintiff* ordinarily is to be awarded attorney's fees in all but "special circumstances," *i. e.,* where an award would be unjust. *Christianburg Garment Co. v. EEOC,* 434 U.S. 412, 417–18, 98 S.Ct. 694, 698, 54 L.Ed.2d 648 (1978). This case presents no "special circumstances" which would dictate denial of an award of attorney's fees. Rather, an award here will serve to encourage representation of similarly situated plaintiffs by competent counsel thereby vindicating "a policy that Congress considered of the highest priority." *Newman v. Piggie Park Enterprises,* 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968).

4. Although *Sweetlowich, Bagby,* and *Hughes, supra,* concerned counsel fee awards to prevailing parties under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, these cases are instructive as to the appropriate reading of 42 U.S.C. § 2000e–5(k) since the provision for counsel fees in section 1988 was patterned in part after section 2000e–5(k). *Hanrahan v. Hampton,* 446 U.S. 754, 758, 100 S.Ct. 1987, 1989 n. 4, 64 L.Ed.2d 670 (1980).

effect, is arguing that plaintiff was not a "prevailing party" on appeal. In whatever manner it is couched, this view is plainly incorrect since plaintiff "essentially succeeded" on his employment discrimination claim on appeal and remand, and was awarded the relief sought. On appeal, the Government failed in its assertion that the retroactive promotion of plaintiff from GS–11 to GS–12 was not supported by the evidence. Instead, the court held that the district court failed to make the findings necessary to justify its order, and directed the district court on remand to make specific findings of fact "on this record or as it may require supplementation" in order to support retroactive promotion to GS–12. *Richerson v. Jones, supra,* 551 F.2d at 924. In sum, the Court of Appeals was not able to determine the basis for the district court's decision from the findings of fact or relevant evidence before it, and thus remanded for clarification. The Government, therefore, did not prevail on its claim on appeal that the district court's job classification award was not predicated on a sufficient evidentiary basis.

## II.  The Lodestar

In this circuit, the calculation of an award of attorney's fees is governed by the dictates of *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161 (3d Cir. 1973) *(Lindy I),* and 540 F.2d 102 (3d Cir. 1976) (en banc) *(Lindy II),* and its progeny. Under these standards, the first item to be determined is the "lodestar," which consists of two factors—hours of service times hourly rate.

■ The hours of service requires a determination of the number of hours actually devoted to claims that ultimately prove successful. Credit is given only for hours "reasonably supportive" of such claims. *Hughes v. Repko, supra,* 578 F.2d at 487. Plaintiff's attorney has submitted detailed exhibits attached to his affidavit in order to substantiate his time spent. The yearly time allotments, including the time spent in drafting the fee petition, are as follows:

| Year | Hours |
|------|-------|
| 1976 | 85.25 |
| 1977 | 36.25 |
| 1978 | 7.25 |
| 1979 | 36.25 |
| 1980 | 9.25 |

Plaintiff also has set forth a detailed explanation of the work performed in monthly allotments, and has excluded from the total hourly figure for 1976 the time expended solely on the issues of punitive damages and interest in which he did not prevail on appeal. After an analysis of the appellate briefs on the issues presented, I find that the aforementioned hourly figures, excluding those hours devoted to the fee petition, represent the time "reasonably supportive" of the successful claims. Furthermore, I find that the hours excluded represent the time devoted to the unsuccessful claims on appeal. Any additional time during the appellate proceedings which was spent on the unsuccessful claims was also fairly attributable to the successful claims. *See Hughes v. Repko, supra,* 578 F.2d at 487.

The next task, which is more difficult, is to determine "whether it was 'reasonably necessary to spend that number of hours' in support of those claims." *Swicker v. William Armstrong & Sons, Inc.,* 484 F.Supp. 762, 767 (E.D.Pa.1980) (quoting *Hughes v. Repko, supra,* 578 F.2d at 487). The Government presents a trilogy of arguments calling for a reduction in the number of hours expended on the case in chief. It contends that (1) much of the time claimed is for work which has already been performed during trial on the merits; (2) the time claimed for simple tasks is unnecessary and repetitive; (3) there is not a complete and exact itemization of the number of hours required to perform the precise tasks claimed.

■ The Government's initial argument is without merit. After reviewing the briefs submitted during the initial trial phase of this litigation and those argued in the Court of Appeals, I have concluded that the issues were sufficiently novel and complex to warrant the number of hours claimed. *See Hughes v. Repko, supra,* 578 F.2d at 487. Furthermore, the complexity

of the issues, both legal and factual,[5] and quality of the briefs indicate that substantial work was performed in preparation for the appellate proceedings and this preparation was not merely duplicative of trial preparation. Moreover, plaintiff should not be penalized in the fee award for vigorously defending a favorable finding of the district court from which the Government takes appeal.

■ Likewise, the Government's contention that the time claimed for simple tasks is unnecessary and repetitive is without merit. The time claimed relates to preparation for argument, motions, and letters, and review of files, briefs, and letters. These are tasks which must be accomplished to prepare for court proceedings and to control litigation; therefore, I find that the time claimed for such tasks is reasonably supportive of the successful claims.

■ The Government's final contention, however, has some substance. Generally, plaintiff's attorney's affidavit states with the requisite specificity the manner in which his time was spent. *See Lindy I, supra,* 487 F.2d at 167. Certain claims for phone calls and correspondence, however, are entirely too vague and therefore fail to meet the requirements imposed by *Lindy I* and *Lindy II. See also Vecchione v. Wohlgemuth,* 481 F.Supp. 776, 786 (E.D.Pa.1979). Accordingly, 3.5 hours will be deducted from time spent in 1976, 4.25 hours from 1977, and 1.5 hours from 1979.

■ The final component of the lodestar calculation is the reasonable hourly rate for the services performed. Obviously, the normal billing rate of the attorney provides a starting point but it is not necessarily the reasonable rate. *See Baughman v. Wilson Freight Forwarding Co.,* 583 F.2d 1208, 1217–18 (3d Cir. 1978). Plaintiff's counsel, Richard S. Meyer, has been a member of the bar for approximately twelve years and has considerable experience in the field of equal employment opportunity matters. He has directed this litigation with the skill and expertise of an experienced practitioner in the field, demonstrating his established legal talent. Counsel has submitted a table of "historical rates" for his services reflecting an increasing rate schedule corresponding to the improving quality of his work which his experience presumably dictates. He claims $60. per hour for 1976; $75. for 1977; $85. for 1978; $95. for 1979, and $115. for 1980. I find that the foregoing rates are reasonable for an attorney of the status and experience of Mr. Meyer in the Philadelphia legal community, and I believe that the use of historical rates best reflects the value of the services performed. *See Vecchione v. Wohlgemuth, supra,* 481 F.Supp. at 790. Moreover, I do not believe, as the Government contends, that the hourly rates should be reduced in relation to the various types of work performed on the case in chief. The nature of the tasks performed by counsel for plaintiff was not ministerial or clerical, but rather these tasks were necessarily devoted to preparation of the appeal and subsequent remand, and properly the function of plaintiff's counsel.

■ Finally, relying on *Copeland v. Marshall,* 594 F.2d 244, 252–53 (D.C.Cir. 1978), the Government argues that where it is the losing defendant, the attorney's fee should be the amount representing the actual costs to the law firm plus a reasonable and controllable profit for the legal work. After the Government's brief was filed, however, the *Copeland* court on rehearing en banc rejected the "cost plus" approach and adopted the *Lindy* formula for calculation of fee awards regardless of the identity of the losing party. *Copeland v. Marshall,* 641 F.2d 880, (D.C.Cir.1980) (en banc). As noted by the en banc *Copeland* court, the "market value" approach in determining fees is consistent with the policies espoused by our Court of Appeals to eliminate dis-

---

5. I adopt the definition of complexity of issues propounded in *Meisel v. Kremens,* 80 F.R.D. 419, 425 (E.D.Pa.1978) and subsequently followed in *Swicker v. William Armstrong & Sons, Inc., supra,* 484 F.Supp. at 767 n. 1:

"[A] legal issue may be said to be complex where it was 'unsettled when the complaint was filed [or] difficult to demonstrate in the context of the facts,' ..., while a factual issue may be said to be complex when its proof requires 'diligent and rather prodigious effort.'" (citations omitted).

crimination in fee awards based upon the identity of the adversary, *id.* at 895 (citing *Rodriquez v. Taylor,* 569 F.2d 1231, 1249 n. 32 (3d Cir.), *cert. denied,* 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978)), and to prevent the fee determination from becoming an administrative burden "'dwarfing the case in chief.'" *Copeland v. Marshall, supra,* 641 F.2d 896, (quoting *Lindy II, supra,* 540 F.2d at 116). I therefore find the Government's argument without merit.

■ Having determined the lodestar calculation for the hours devoted to the case in chief in connection with the appeal and remand phases of this litigation, I turn now to the calculation of the lodestar for the preparation of the fee petitions. Work performed on fee petitions is clearly compensable where, as here, attorney's fees are statutorily authorized, *Prandini v. National Tea Co.,* 585 F.2d 47 (3d Cir. 1978) *(Prandini II).*

Plaintiff claims compensation for about 40 hours to prepare such petitions since March 31, 1976. In 1976 and 1977, counsel submitted supplements to the original fee petition before Judge Gorbey, and further supplemented the fee petition after the Court of Appeals remanded the case. When the district court proceedings were concluded, plaintiff prepared, in 1979 and 1980, a supplemental petition for counsel fees. The hours claimed by plaintiff's counsel for fee petition work since 1976 appears reasonable; however, since much of this work did not require great legal skill, the hourly rate to be allowed should not be equal to that permitted for the case in chief. *See Fernandez v. Shapp,* No. 74–2959, slip op. at 9 (E.D.Pa. May 29, 1980). Therefore, I will allow compensation for the fee petition at a rate equal to two-thirds of counsel's usual hourly rates.

Multiplying the approved hours by the hourly rates, the lodestar calculation proceeds as follows:

| | Hours Case in Chief | Hours Fee Petition | Hourly Rate Case in Chief | Hourly Rate Fee Petition | Lodestar Case in Chief | Lodestar Fee Petition |
|---|---|---|---|---|---|---|
| 1976 | 68.25 | 13.50 | $ 60.00 | $ 40.00 | $4095.00 | $ 540.00 |
| 1977 | 24.25 | 7.75 | 75.00 | 50.00 | 1818.75 | 387.50 |
| 1978 | 7.25 | 0 | 85.00 | 56.67 | 616.25 | 0 |
| 1979 | 25.25 | 9.50 | 95.00 | 63.34 | 2398.75 | 601.73 |
| 1980 | 0 | 9.25 | 115.00 | 76.67 | 0 | 709.20 |
| TOTAL | | | | | $8928.75 | $2238.43 |

## III. The Multiplier

In determining the reasonableness of the fee, the lodestar or objective value of the case in chief may be adjusted to account for the exceptional circumstances of the case. Two significant factors have been identified by the Third Circuit as possible exceptional circumstances which might justify adjustment of the lodestar figure: (1) the contingent nature of the case; and (2) the quality of the work performed in the particular case. *See Lindy I, supra,* 487 F.2d at 169;

*Lindy II, supra,* 540 F.2d at 117. Plaintiff's counsel requests an upward adjustment for both factors.[6]

### A. Contingency

■ In *Lindy II,* the Court identified three separate factors which make up the "contingent nature of success: (1) the complexity of the case and the probability of success; (2) the risks assumed in developing the case; and (3) the delay in receipt of payment." 540 F.2d at 117. Each of these

---

**6.** In *Baughman v. Wilson Freight Forwarding Co.,* 583 F.2d 1208, 1219 (3d Cir. 1978), the Third Circuit instructed the district courts not to include the hours devoted to the fee petition for purposes of adjusting the lodestar amount for contingency or quality.

factors is present here, and, thus, plaintiff's request for a 7½% increase for contingency is granted.

It is not disputed that plaintiff's counsel undertook representation in this case on a contingent basis without any guarantee of payment. Furthermore, plaintiff's burden was significant since the matter was complex, both legally and factually. Many of the legal issues concerning the Equal Employment Opportunity Act of 1972 were unresolved at the time suit was filed. The factual complexity is evident from the substantial pre-trial preparation necessary to acquire proof of unlawful motivation. In conjunction these factors contributed to a dubious probability of success in this suit. While it is true that the trial on the merits lasted one day, this fact alone is not necessarily indicative of the complexity of the case, but rather reflects the extensive preparation of counsel. Also, the number of hours expended and out-of-pocket expenses are not insignificant. Finally, plaintiff's counsel has not received payment for any services rendered since March 31, 1976, a delay of over four years. For the foregoing reasons, I find that a 7½% increase for the contingent nature of success is well within the bounds which the Court of Appeals has articulated in *Lindy II.*

### B. *Quality of Work*

In contrast to the quality of the work in general, which is a component of the reasonable hourly rate, a court may adjust the lodestar where the "lawyer discharged the professional burden undertaken with a degree of skill above or below that expected for lawyers of the caliber reflected in the hourly rates." *Lindy II, supra,* 540 F.2d at 118. After an evaluation of the result obtained and the methods used in expediting this case, I find that an adjustment based on the quality of the work is unwarranted. I do not suggest that the work performed was inferior. On the other hand, this case proceeded expeditiously with the high caliber of legal skill to be expected from an attorney of the reputation and skill of Mr. Meyer. This high quality is adequately reflected in the hourly rate charged by counsel. *Fernandez v. Shapp,* No. 74-2959, slip op. at 8 (E.D.Pa. May 29, 1980); *Wehr v. Burroughs Corp.,* 477 F.Supp. 1012, 1019 (E.D.Pa.1979). The skill displayed does not reach the level of "exceptional services" stressed by our Court of Appeals. *Baughman v. Wilson Freight Forwarding Co., supra,* 583 F.2d at 1218 (quoting *Lindy II,* 540 F.2d at 118). No other rational factors relevant to this particular case are present to justify further increases above the lodestar figure.

### IV. Substantive Purposes of the Equal Employment Opportunity Act of 1972

*Hughes v. Repko, supra,* 578 F.2d at 487–88, emphasized that the fee award should be evaluated "in light of the important substantive purposes of the Civil Rights Act." This evaluation

requires the district court to decide whether the calculated fee, including the portion that reflects compensation for work performed in the attorney's fees hearing, is *reasonable* in light of the legislative history of the fee statute and the substantive purposes of the underlying civil rights statute involved.

*Bagby v. Beal,* 606 F.2d 411, 417 (3d Cir. 1979) (emphasis added). Some of the factors in gauging the reasonableness of the fee award are "the importance of the vindicated constitutional right, the congressional policy behind the statute, the number of citizens benefiting, the extent of the civil rights violation remedied, the novelty of the theory of recovery, and the service to the public." *Holy Spirit Association v. Bailey,* No. 79–3727, slip op. at 5 (E.D.Pa. Dec. 31, 1980).

I am awarding plaintiff's counsel attorney's fees of $12,236.84, and Judge Gorbey previously awarded counsel fees of $27,500 for work performed from the inception of the case up to and including March 31, 1976. While there is no doubt, as Judge Gorbey found, that the substantive purposes of the Equal Employment Opportunity Act of 1972 have been furthered through the substantial efforts of counsel in this case, I find that the attorney's fees presently awarded are fair and reasonable. There-

fore, a further upward adjustment is not warranted.

## V. Paralegal

Plaintiff's counsel claims compensation for twenty paralegal hours at a rate of $40. per hour in connection with the fee petition. Compensation may be awarded for the services of a paralegal if they constitute "work that has traditionally been done by an attorney." *Jones v. Armstrong Cork Co.*, 630 F.2d 324, 325 n. 1 (5th Cir. 1980). Here, the paralegal prepared exhibits to the affidavit of plaintiff's counsel in support of his fee petition. This work is clearly work that an attorney "traditionally" would have performed and is therefore recoverable. In addition, I find the number of hours reasonable because of the detailed affidavits submitted but reduce the hourly rate to $20. *See Swicker v. William Armstrong & Sons, Inc., supra,* 484 F.Supp. at 773. Thus, the total of $400. for paralegal work will be allowed.

## VI. Costs

Plaintiff also claims reproduction, court fees, computer research, and other costs in the amount of $921.19. The fee award provision which is incorporated into the Equal Employment Opportunity Act of 1972 permits an award of "reasonable attorney's fees as part of the costs" and makes the United States "liable for costs the same as a private person." 42 U.S.C. § 2000e–5(k). In my view, the language of this statute implies that Congress intended to authorize the recovery of only one specific type of cost—attorney's fees—and provides for the award of other costs against the Government identical to that of a private individual. The authority to assess costs other than attorney's fees against private individuals must be derived from other sources. Costs such as reproduction and court fees are recoverable under 28 U.S.C. § 1920 and Fed.R.Civ.P. 54(d). The petition

here claims $432.06 for these costs and this will be awarded. However, the cost of such items as transportation, meals, computer search, and telephone are not subject to recovery as costs under the foregoing authority, but are out-of-pocket expenses. Thus, the remaining $489.13 is disallowed. *See Vecchione v. Wohlgemuth, supra,* 481 F.Supp. at 798–99; *Wehr v. Burroughs Corp., supra,* 477 F.Supp. at 1022.[7]

## VII. Conclusion

The final calculation is as follows:

Richard S. Meyer

| | | |
|---|---|---|
| I. | Lodestar (case-in-chief) | $ 8,928.75 |
| II. | Multiplier (contingent nature) | 7.5% |
| | Subtotal | $ 9,598.41 |
| III. | Lodestar (Fee Petition) | $ 2,238.43 |
| | (a) Paralegal | 400.00 |
| IV. | Total Attorney's Fees | $12,236.84 |
| V. | Costs | 432.06 |
| **TOTAL AWARD** | | $12,668.90 |

---

7. This analysis of 42 U.S.C. § 2000e–5(k) comports with the view taken by my colleague, Judge Becker, in *Vecchione v. Wohlgemuth, supra,* 481 F.Supp. at 798–99, wherein he construed the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, in similar fash-

ion. As stated earlier, *see* note 4 *supra, Hanrahan v. Hampton, supra,* 100 S.Ct. at 1989 n. 4, instructs us that it is appropriate to construe these two statutes in similar manner. *See also Wehr v. Burroughs Corp., supra,* 477 F.Supp. at 1022 n. 8.