**DEMOCRATIC CENTRAL COMMITTEE OF the DISTRICT OF COLUMBIA, et al., Petitioners,**

v.

**The WASHINGTON METROPOLITAN AREA TRANSIT COMMISSION, Respondent,**

**D.C. Transit System, Inc., Intervenor.**

**Nos. 21865, 24398, 24415 and 24428.**

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 21, 1993.

Decided Jan. 14, 1994.

---

Gilbert Hahn, Jr., Washington, DC, for the Black United Front, et al., petitioner in No. 24428, was on the request to pay expenses, and with whom Landon G. Dowdey, Washington, DC, for the Democratic Central Committee of the District of Columbia, et al., petitioners in Nos. 21865 and 24398, were on the Petition for Rehearing and Clarification.

Leonard N. Bebchick, Washington, DC, for the Security Trust Co., N.A.

Lutz Alexander Prager, Asst. Deputy Corp. Counsel, Washington, DC, for District of Columbia, petitioner in No. 24415.

Before: BUCKLEY and RANDOLPH, Circuit Judges, and MACKINNON, Senior Circuit Judge.

Opinion for the Court filed PER CURIAM.

PER CURIAM:

The court, on September 21, 1993, filed an opinion in support of its prior order of June 22, 1993 that authorized and directed the Security Trust Company to pay petitioners' attorneys a total of $1 million from the Riders' Fund, *i.e.*, $500,000 to each attorney, and their out-of-pocket expenses. In footnote 5 of the opinion the court stated:

> If petitioners' attorneys have any additional reimbursable costs, they may submit an appropriate motion.

*Democratic Cent. Comm. v. Washington Metro. Area Transit Comm'n,* 3 F.3d 1568, 1576 (D.C.Cir.1993).

Subsequently, on October 21, 1993, petitioners' attorneys filed a Petition for Rehearing and Clarification of the court's opinion of September 21, 1993 requesting the court to add a statement to footnote 5 stating that in the event of a further substantial recovery of the Riders' Fund petitioners' counsel "may submit an appropriate motion for additional fees."

This request is predicated upon the assumption that the fees awarded by the court's order of June 22, 1993, and explained by its opinion of September 21, 1993, should be supplemented in the event that the Trust Company and its attorney, Mr. Bebchick, are successful in collecting all or some portion of the approximately $5 million in uncollected restitution. However, the court's order and opinion, *supra,* compensated petitioners' attorneys for their entire services in the cases which services terminated on July 9, 1992 when it became the obligation of the Trust Company to collect the remaining $5 million due as restitution and Mr. Bebchick was appointed by the Trust Company, with the court's approval, as counsel for the Trust

Company on behalf of the Riders' Fund to pursue such collection. With respect to the services of petitioners' attorneys the court's opinion pointed out:

> Petitioners' attorneys have been paid in full [by the $1,000,000 payment] for their services. and no further services are due, nor are any sums accruing.

*Democratic Cent. Comm. v. Washington Metro. Area Transit Comm'n*, 3 F.3d 1568, 1576 (D.C.Cir.1993).

In reaching such conclusion, the court considered all services that petitioners' attorneys had rendered to the cases, and the potential justification for future fees that might arise from the Trust Company's collection of additional restitution, and decided that the fees awarded were reasonable. *Cf. Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1271 (D.C.Cir.1993) (stating that trial court's substantial discretion in making reasonable fee determinations is premised upon the court's "superior understanding of the litigation."). In reaching its conclusion, the court gave full consideration to the possibility that further restitutionary sums might be collected and also fully considered the extremely difficult litigation that the Riders' Fund was facing in attempting to collect the remaining $5 million in restitution. At the time of the departure of petitioners' attorneys from the cases, there remained approximately $5 million in restitution to be collected from an insolvent D.C. Transit System, Inc. Promissory notes evidencing this debt, accepted by petitioners' attorneys, were secured by insufficient collateral.

On July 9, 1992, when Mr. Bebchick was appointed to collect the remaining $5,000,000, the services of petitioners' attorneys terminated with respect to the litigation and Trust Company counsel was left with the very difficult task of collecting approximately $5 million from an insolvent and litigious transit company. To date, collection efforts have required Trust Company counsel (1) to obtain a $4,976,124.79 judgment for unpaid restitution; (2) to institute two foreclosure proceedings against Transit's rights-of-way in Montgomery and Prince George's Counties given as security for the two notes; (3) to institute attachment (garnishment) proceed-

ings against the $40,000 in monthly rents that the Chalks had been receiving from the lessee of the Brookland Garage. in the District of Columbia; (4) to employ expert counsel in an attempt to enhance the value of the Georgetown Lots; and (5) to institute a broadly based fraud claim against the Chalks, D.C. Transit and the F.D.I.C. charging an alleged attempt to defraud D.C. Transit's creditors by an elaborate loan and payback scheme that constituted nothing more than equity contributions to D.C. Transit.

So we conclude that since the services of petitioners' attorneys terminated on July 9, 1992, and they have been compensated with $1 million in attorneys' fees for all services for which they might claim responsibility, *see Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1272 (D.C.Cir.1993), they have no basis upon which to receive any remuneration for developments that have occurred, or might occur, after July 9, 1992.

The court, therefore finds, for reasons set forth above and in the court's opinion of September 21, 1993, *Democratic Cent. Comm. v. Washington Metro. Area Transit Comm'n, supra*, that the motion of petitioners' attorneys for rehearing and clarification is denied.

### MOTION FOR ADDITIONAL REIMBURSABLE COSTS

■ In response to the court's suggestion in its opinion of September 21, 1993, footnote 5, *supra*, Gilbert Hahn, Jr., Attorney for Petitioner Black United Front, moved the court on October 28 and November 2, 1993 requesting payment of $27,531.78 in costs for the period from January 1, 1990 to September 30, 1993. Responses objecting to portions of Mr. Hahn's requests were filed by the District of Columbia on November 4, 1993 and by the Trust Company for the Riders' Fund on November 9, 1993. Petitioner has not replied to these objections.

The District of Columbia objected to the lack of specification and to the inclusion of approximately $263.00 per month for "unallocated office costs." The Trust Company also objected to the "unallocated office costs" and to the reasonableness of the charge for pho-

tocopying and telefaxing and to several other items of expenditure. The court has reviewed petitioners' request with the foregoing objections in mind and has also considered additional objections.

In considering Mr. Hahn's request we note that it is not limited to taxable costs, but is based upon the terms of the Compromise Agreement which provides that he will be paid "expenses," *i.e.*, "out of pocket costs." *Democratic Cent. Comm. v. Washington Metro. Area Transit Comm'n*, 3 F.3d 1568, 1570 (D.C.Cir.1993). Notwithstanding the fact that the Compromise Agreement never closed we apply the same standards for the payment of expenses.

The court finds that the objections of the District of Columbia and the Trust Company to the costs are well taken. In so ruling, as set forth below, we uphold the objections to Mr. Hahn's failure sufficiently to specify the purposes of the expenses for which reimbursement is requested, and to the objections to "unallocated office expense" and to the expenditures for photocopying and telefaxing as unreasonable. In addition the court objects to the payment of expenses that were paid after petitioner's services as attorney terminated on July 9, 1992.

In sum we order the following deductions to be made from Mr. Hahn's request: (1) "[C]osts" in the amount of $6,657.91 for the period from 7/1/92 to 9/30/93 since they constitute petitioner's expenses after his services as attorney terminated on July 9, 1992 when the Trust Company appointed Mr. Bebchick as Counsel for the Riders' Fund; (2) "unallocated office costs" in the total amount of $8,366.37 (Exhibit B less Exhibit A for the relevant period) constitute unrecoverable overhead expenses and are not deductible as

costs or expenses, *Hirschey v. FERC*, 777 F.2d 1, 6 (D.C.Cir.1985) ("Overhead ... expenses ... are traditionally covered by attorneys' fees and [are] not charged separately."); (3) $4,522.79 constituting 60 percent of the $7,537.98 billed for "photocopying" and (4) $1,206.00 constituting 60 percent of the $2,010.00 billed for "telefaxing," both on the grounds of excessiveness, *see* Trust Company Objections of November 9, 1993; and (5) the following charges, the purposes of which are not sufficiently specified: 6/30/90 "Overtime" $15.00, 1/31/91 Misc. Charge $10.00, 11/30/91 Misc. Charge Washington Business Journal $3.00, 12/31/91 Misc. Charge Luncheon $26.59, 4/30/92 Misc. Charge $14.10, and 5/31/92 Paralegal Work $144.00, *see Allen v. United States*, 665 F.2d 689, 697 (5th Cir. 1982) (paralegal expenses are part of attorney's fees and are unrecoverable overhead expense); *Jones v. Armstrong Cork Co.*, 630 F.2d 324, 325 (5th Cir.1980). (This subtotal is $212.69). The sum total of the foregoing deductions amount to $20,965.76 which when deducted from the request for $27,531.78, leaves $6,566.02 in reimbursable expenses.

For reasons set forth above, it is hereby

ORDERED, by the Court, that the Trust Company pay from the Riders' Fund $6,566.02 to Gilbert Hahn, Jr. in full satisfaction of all remaining claims for expenses.[1]

Judgment in accordance with the above.

*So ordered.*

---

1. With this payment of $6,566.02 the attorneys in the cases will have received a total of $1,352,-370.58 in attorneys' fees, interest and costs.